2002 UT App 74

Yuriy EKSHTEYN, Petitioner,

v.

DEPARTMENT OF WORKFORCE SERVICES, Respondent.

No. 20010463–CA.

Court of Appeals of Utah.

March 14, 2002.

Jay L. Kessler, Salt Lake City, for Petitioner.

Lorin R. Blauer, Salt Lake City, for Respondent.

Before Judges BILLINGS, BENCH, and GREENWOOD.

## OPINION

GREENWOOD, Judge.

¶ 1 Yuriy Ekshteyn appeals the Workforce Appeals Board's (the Board) decision denying him backdated unemployment benefits for failure to show good cause for his untimely filing. Ekshteyn argues that his "lack of knowledge" of his right to file a claim constitutes "good cause" pursuant to Utah Code Ann. § 35A–4–403 (Supp.2001)[1] of Utah's Employment Security Act, for the purpose of allowing his late claim to be backdated. We affirm.

## BACKGROUND

¶ 2 Ekshteyn worked for Spiffy Ice as a delivery driver from April 24, 1999 through August 11, 1999. On August 11, Ekshteyn was delivering ice to an outdoor show when a tornado came through the area. Ekshteyn was caught in the tornado and severely injured, suffering a crushed face, torn shoulder, and injuries to his collar bone, back, and knee. Due to the severity of his injuries, Ekshteyn incurred substantial medical bills. From August 12, 1999, until January 6, 2000, Ekshteyn received workers' compensation benefits. During this period, Ekshteyn was under heavy medication. Ekshteyn consulted with two attorneys with regard to his injuries and workers' compensation claim,

---

1. Although Utah Code Ann. § 35A–4–403 has since been amended, no material changes have been made; therefore, we cite to the current version of the statute throughout this opinion.

but these attorneys never informed him about the availability of unemployment insurance benefits. Ekshteyn began looking for work on January 2, 2000, and obtained work beginning on March 24, 2000, with Popular Mill Design Cabinets.

¶ 3 Ekshteyn first became aware of the unemployment insurance program when he read a notice on a bulletin board at his new place of employment. Ekshteyn then contacted the Department of Workforce Services (the Department) and filed an application for benefits on January 2, 2001, requesting that his claim be backdated, and that he receive benefits for the weeks from January 2, 2000, through March 25, 2000.

¶ 4 The Department denied Ekshteyn's claim, finding that he did not "show[] that [he was] prevented from filing earlier and [he did] not meet the requirements for backdating" under Utah Code Ann. § 35A–4–403(1)(a) (Supp.2001). Ekshteyn appealed the Department's denial of benefits to an Administrative Law Judge (ALJ) who affirmed the Department's decision. Appellant then appealed to the Board, which affirmed the ALJ's decision in its entirety. This petition for review followed.

### ISSUE AND STANDARD OF REVIEW

¶ 5 " '[B]ecause proper application of the Employment Security Act and the relevant rules requires little highly specialized or technical knowledge that would be uniquely within the [Board's] expertise ... this court will review the agency's decision with only moderate deference.' " *Autoliv ASP, Inc. v. Department of Workforce Servs.,* 2001 UT App 198,¶ 16, 29 P.3d 7 (quotations and citations omitted). "The ultimate decision as to whether good cause exists is a mixed question of law and fact and should be affirmed only if it is reasonable." *Armstrong v. Department of Employment Sec.,* 834 P.2d 562, 565 (Utah Ct.App.1992).

### ANALYSIS

### I. "GOOD CAUSE" FOR UNTIMELY FILINGS

¶ 6 Ekshteyn argues that his "lack of knowledge" constitutes "good cause" under Utah's Employment Security Act (the Act). Ekshteyn contends that because he did not know he was eligible for unemployment benefits he was prevented from filing for benefits.

¶ 7 Filing of claims for unemployment insurance benefits is governed by the Act and its corresponding rules. *See* Utah Code Ann. § 35A–4–403 (Supp.2001). Under section 35A–4–403(1)(a), "an unemployed individual is eligible to receive benefits with respect to any week only if ... [t]he individual has made a claim for benefits with respect to that week in accordance with any rules the department may prescribe." Utah Code Ann. § 35A–4–403(1)(a) (Supp.2001). Pursuant to this section, the Department has promulgated rules, including the following:

R994–403–102a.  Filing a New Claim.

(1) Effective Date of a New Claim.

When a claimant believes he may be entitled to unemployment insurance benefits, it is his responsibility to file a claim during the week he desires to claim the benefits, not after the week has passed. *Backdating prior to the week of filing will be allowed only if good cause can be established* in accordance with Section R994–403–107a, and Subsections 35A–4–403(1)(a) and 35A–4–406(1)(a). The effective date of the new claim establishes the period of time during which wages can be used for determining the monetary entitlement, and in the case of law changes, the laws under which eligibility is determined....

. . . .

R994–403–106a.  Filing Weekly Claims.

(1) The claimant is solely responsible for filing weekly claims. To maintain continuing eligibility for benefits an individual shall file weekly claims in person, by mail or by telephone in accordance with instructions from the Department.

Utah Admin. Code R994–403–102a, –106a (2001) (emphasis added).[2]

¶ 8 Rule 994–403–107a provides guidelines and examples of good cause and lack of good cause for late filings:

---

**2.** Because no material changes have occurred to these rules, we cite to the current code.

R994–403–107a. Good cause for Late Filing.

(1) A claimant has the duty to establish, by competent evidence, that good cause existed for not claiming benefits as prescribed. The Department has a responsibility to NOT apply excessive harshness or technicality in determining good cause....

(2) Good cause for late filing will generally be established by evidence a claimant was prevented from filing a timely claim. The proof of inability to properly file may establish unavailability for work. Some examples that may establish good cause for late filing but may raise an availability issues are:

(a) a crisis of several days duration that interrupts the normal routine during the time the claim should be filed,

(b) hospitalization or incarceration,

(c) coercion or intimidation exercised by the employer to prevent the prompt filing of a claim, and

(d) failure of the Department to discharge its responsibilities promptly in connection with a claim.

(3) Some examples of reasons for late filing that may NOT be considered good cause are:

(a) failure to affix correct postage or otherwise properly mail the claim, including placing for mailing somewhere other than in an approved Postal Service mail box or mail drop,

(b) failure to mail the claim far enough in advance to reasonably insure delivery to the Department within the allowable time frame,

(c) delegation of the mailing or filing responsibility to another person,

(d) procrastination for non-compelling reasons,

(e) misplacing the claim, the claim filing telephone number or Personal Identification Number (PIN),

(f) vacation,

(g) temporary or minor illness,

(h) transportation problems,

(i) failure to notify the Department of the proper name, address or an address change, and

(j) failure to properly label a personal mail box to insure mail delivery, and

(k) reliance upon inaccurate advice from friends, relatives, other claimants or similar sources as the Department is, and shall remain, the only acceptable source of information about unemployment insurance.

Utah Admin. Code R994–403–107a (2001).

■ ¶ 9 The examples provided in the rule do not address whether "lack of knowledge" is considered "good cause." Ekshteyn, however, argues that each of the examples assume some form of knowledge possessed by the claimant that benefits are available. Therefore, because Ekshteyn had no knowledge of the benefits available, he contends he would necessarily fall outside of the rules' intended purpose.

■ ¶ 10 However, Ekshteyn fails to offer any support for his interpretation of R994–403–107a. The legislature granted the Department discretion in establishing rules under section 35A–4–403(1)(a) and "an agency's interpretation of statutory provisions is entitled to deference when there is more than one permissible reading of the statute and no basis in the statutory language or the legislative history to prefer one interpretation over another." *Morton Int'l, Inc. v. Utah State Tax Comm'n,* 814 P.2d 581, 588 (Utah 1991). Assuming that more than one permissible reading of R994–403–107a is viable, Ekshteyn has failed to show any text or legislative history that would persuade us to favor Ekshteyn's reading over the Department's.

¶ 11 The ALJ denied Ekshteyn's untimely claim for unemployment insurance benefits stating:

The claimant did not file for unemployment insurance benefits when he wanted to receive the benefits because he was not aware of the unemployment insurance program. Nothing prevented the claimant from trying to learn of this program. He could have looked it up in the phone book and called the Department of Workforce Services. The claimant's own ignorance in

regard to the program is not good cause for late filing or backdating.

¶ 12 The Board affirmed the ALJ, adding, "[i]t is the duty of citizens to make themselves aware of their entitlement to benefits." Given these stated reasons, the Board could have viewed the examples listed in R994–403–107a, regarding good cause, as describing the level of control a claimant has over events which prevent him from timely filing. For instance, the examples which may establish good cause involve circumstances beyond a claimant's control, such as a crisis, hospitalization, or a Department failure. *See* Utah Admin. Code R994–403–107a(2)(a)–(d). Conversely, the examples which do not establish good cause involve circumstances generally within a claimant's control, such as vacation, inadequate postage, transportation problems, or procrastination. *See id.* R994–403–107a (3)(a)-(k). Consistent with this approach, the Board could reasonably determine that Ekshteyn's knowledge about unemployment insurance benefits was within his control and therefore, his "lack of knowledge" does not establish good cause.

¶ 13 Two New York Supreme Court memorandum decisions support the Board's determination regarding good cause.[3] In *Condon v. Levine*, 51 A.D.2d 1070, 380 N.Y.S.2d 364, 365 (1976), the New York Supreme Court rejected an appellant's argument that " 'unaware[ness]' that her employment was covered by unemployment insurance [benefits]" established "good cause." The Unemployment Insurance Appeal Board found that appellant being "unaware" was not good cause and she was therefore "ineligible for benefits." *Id.* The court concluded, without analysis, that there was substantial evidence to sustain the Board's determination and affirmed. *See id.*

¶ 14 Similarly, in *Casey v. Levine*, 50 A.D.2d 1032, 377 N.Y.S.2d 662, 662 (1975), the appellant argued that his failure to comply with the filing requirements "was due to an honest mistake on his part." *Id.* The Unemployment Insurance Appeal Board found that the appellant "was not misled by a

representative of the Industrial Commissioner and no circumstances have been shown that would constitute good cause for excusing claimant's failure to file for benefits." *Id.* at 662–63. The New York Supreme Court sustained the Board's decision because there was substantial evidence "that claimant failed to comply with registration requirements and furnished no valid reason for such failure." *Id.* at 663.

¶ 15 We believe the lack of case law on the issue before us exists because equating "good cause" with unawareness of rights, and nothing more, is unreasonable on its face. It would render "good cause" almost meaningless and would result in unwarranted administrative problems. *See Autoliv*, 2001 UT App 198 at ¶ 16 (stating deference to administrative agency decisions includes consideration of " 'policy concerns' " and whether issue is " 'susceptible to uniform legal rules' " (citations omitted)).

## CONCLUSION

¶ 16 The Board's decision that Ekshteyn's lack of knowledge was not good cause for the late filing of his claim was reasonable. We therefore affirm.

¶ 17 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and RUSSELL W. BENCH, Judge.

---

**3.** Utah case law is silent on what "good cause" means, and it appears, with the exception of the two New York cases cited, that this particular issue has not been addressed in other jurisdictions.